(September 16, 1912.)

GOODING MILLING & ELEVATOR CO., Appellant, v. LINCOLN COUNTY STATE BANK et al., Respondents.

[126 Pac. 772.]

CHATTEL MORTGAGE—FORECLOSURE AND SALE OF CHATTEL MORTGAGE—RESTRAINING SALE OF MORTGAGED PROPERTY—MORTGAGE OF COMMUNITY AND SEPARATE PROPERTY—ESTOPPEL.

(Syllabus by the court.)

1.   Facts of this case examined, and *held* sufficient to support a finding by the trial court that certain bakery supplies, purchased by a married woman and by her mortgaged, were at the time of the execution of the mortgage the separate property of the wife and not the community property of husband and wife.

2.   Where a junior mortgagee has notice at the time of taking a mortgage that a senior mortgage exists on the same property which was executed by the wife alone, and that the wife claimed the property as her separate property, and that the husband admitted and declared that the property was the separate property of the wife, and at the time of the execution of the junior mortgage the junior mortgagee understood that he was taking a second mortgage

on the property: *held,* that the junior mortgagee is estopped from questioning the validity of the senior mortgage or contending that the property mortgaged was community property instead of the separate property of the wife.

3.   Where property was purchased by a married woman in a foreign state, and under the laws of that state such property became her separate property, and the property is thereafter brought into the state of Idaho, it will continue to be the separate property of the wife.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County.   Hon. Edward A. Walters, Judge.

Action to enjoin the sale of certain personal property on notice and sale before the sheriff.   Judgment for defendant, and plaintiff appealed.   *Affirmed.*

W. G. Bissell and O. R. Baum, for Appellant.

As a rule, property purchased with money borrowed by either spouse during the existence of the community is community property.   (*N. & P. Hypotheek Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516.)

It is presumed to remain community property until the respondent bank has, by a fair preponderance of evidence, established its separate character, and the burden is upon it so to do.   (*Addams v. Knowlton,* 22 Cal. 283; *Weeb v. Peet,* 7 La. Ann. 92; *Huntington v. Legros,* 18 La. Ann. 126; *Block v. Melville,* 22 La. Ann. 147.)

The proof introduced to establish the separate nature of the property should be closely scrutinized, bearing in mind the facility with which frauds may be accomplished by pretense of gift between husband and wife.   (*Lake v. Lake,* 18 Nev. 361, 4 Pac. 724, 7 Pac. 74; *Davis v. Zimmerman,* 40 Mich. 27.)

A junior mortgagee is never estopped from setting up the invalidity of a senior mortgage unless the junior mortgage contains a stipulation recognizing the priority of the senior mortgage.   (*Old National Bank v. Heckman,* 148 Ind. 490, 47 N. E. 953; *Hart v. Hayden,* 79 Ky. 346.)

E. K. Walsh and Sutphen & Sutphen, for Respondents.

Property acquired in a foreign jurisdiction, which is there the property of one of the spouses, maintains its separate character when brought into a state having community property laws. (*Brookman v. Durkee,* 46 Wash. 578, 123 Am. St. 944, 90 Pac. 914, 12 L. R. A., N. S., 921, 13 Ann. Cas. 839; *In re Burrows' Estate,* 136 Cal. 113, 68 Pac. 488; *Kreamer v. Kreamer,* 52 Cal. 302; 10 Current Law, p. 8; *La Salle v. Woolery,* 14 Wash. 70, 53 Am. St. 855, 44 Pac. 115, 32 L. R. A. 75.)

Gifts of the wife's earnings (if still the husband's), or of any personal property of the husband, are favored in equity so long as creditors be not prejudiced. (Schouler on Domestic Relations, secs. 189–293.)

The appellant, at the time it took its mortgage from Katherine Holmes and A. A. Holmes, was bound to take notice of the prior recorded mortgage given by the wife alone on the same property. (*Schields v. Ruddy,* 3 Ida. 148, 28 Pac. 405 (2 Ida. 884); *Zimpleman v. Robb,* 53 Tex. 274; *Wells, Fargo & Co. v. Alturas Com. Co.,* 6 Ida. 506, 56 Pac. 165; 6 Cyc. 1064; 21 Cyc. 1669, note 64.)

A second mortgagee is always estopped to set up the invalidity of a prior mortgage whose defects may be and are waived by the mortgagor. (*Pritchett v. Mitchell,* 17 Kan. 355, 22 Am. Rep. 287; *Green v. Kemp,* 13 Mass. 515, 7 Am. Dec. 169; *Hardin v. Hyde,* 40 Barb. (N. Y.) 435; 2 Hilliard on Mortgages, pp. 396, 397.)

AILSHIE, J.—This is an appeal from an order and decree dissolving a temporary injunction and ordering the sale of certain property held by the sheriff under affidavit and notice on foreclosure of personal property. A motion has been made in this court to dismiss the appeal, and this motion is based upon a showing that no *supersedeas* bond was given and that the property involved has been sold by the sheriff in accordance with the order and decree of the court. The writer is of the opinion that the motion is well taken and

that the appeal should be dismissed (*Wilson v. Boise City,* 7 Ida. 69, 60 Pac. 84; *Roberts v. Kartzke,* 18 Ida. 552, 111 Pac. 1), but my associates are not of like opinion, and for that reason the motion is denied.

This controversy arose over the validity of two chattel mortgages. The respondent, the Lincoln County State Bank, commenced its proceedings before the sheriff on affidavit and notice for foreclosure of a mortgage on certain chattels owned by Katherine Holmes. Prior to the sale by the sheriff, the appellant, the Gooding Milling & Elevator Co., commenced this action against the bank and the sheriff and others to enjoin and restrain the sale on the ground that the appellant had a superior lien on the property to that held by the Lincoln County State Bank. It appears that in the latter part of 1909, Katherine Holmes went from Boise to Gooding, and took with her a letter from F. H. Parsons, cashier of the Bank of Idaho, addressed to F. R. Gooding, and recommending Mrs. Holmes as an honest, reliable and straightforward woman, who was desirous of entering into business in the town of Gooding. Upon the recommendation of Gooding, she and her husband procured some money and credit from the Gooding State Bank. About the 4th of February, 1910, Mrs. Holmes purchased from a firm in Chicago an oven and certain other supplies commonly used and necessary in carrying on the bakery business. These supplies were shipped directly from Chicago to Mrs. Holmes in Gooding, Idaho. It appears from the invoice that she paid $78 cash and gave her notes for the balance of $180. Her husband seems not to have been known in this transaction. On the 9th of May, 1910, Mrs. Holmes individually leased from Fred R. Reed a building in the town of Gooding for the purpose of occupying and using it as a bakery, and individually signed and executed the lease. She thereafter secured credit and purchased supplies from the milling company as she needed them in her business.

Business ran along this way for a short time, when she transferred her account from the Gooding State Bank to the Lincoln County State Bank, and on June 13, 1910, Mrs.

Holmes individually borrowed from the Lincoln County State Bank, one of the respondents herein, the sum of $400, and executed her promissory note in favor of the bank for that sum. On the same day she individually executed a mortgage in favor of the Lincoln County State Bank upon certain personal property, consisting of her ovens and bakery supplies, to secure the payment of this $400 note. At that time she represented to the bank that the property was her individual and separate property, and her husband also at the same time advised the officers of the bank that this property was his wife's separate property and that she was running the business on her own account. Business ran on and she made payments from time to time until she had paid about half of this indebtedness. On the 19th of November, 1910, she and her husband jointly executed a mortgage upon the same property in favor of the appellant herein, the Gooding Milling & Elevator Co., to secure appellant for the balance of Mrs. Holmes' account, aggregating the sum of $352.60. The consideration for this mortgage was the pre-existing indebtedness. The Milling & Elevator Co., the junior mortgagee, now seeks to enjoin the sale of the property in satisfaction of the senior mortgage, on the ground that the senior mortgage, having been executed by the wife alone, was invalid and void.

The trial court made certain findings of fact to which the appellant excepts, the principal and essential ones being, first, that the property mortgaged by Katherine Holmes to the Lincoln County State Bank was at the date thereof the separate property of the said Katherine Holmes; and, second, that the agent of the Gooding Milling & Elevator Co. at the time it took the mortgage from Katherine Holmes and A. A. Holmes, her husband, had notice of the existence of the mortgage that had been previously executed by Katherine Holmes to the Lincoln County State Bank, and that the milling company's agent at that time understood that the mortgage he was taking in favor of the Milling & Elevator Co. was a second mortgage, and was subsequent to the mortgage held by the Lincoln County State Bank. He further found that there was no agreement between the Milling & Elevator Co.

and the Holmeses, whereby the company was authorized or permitted to assert the coverture of Katherine Holmes or to contest the validity of the mortgage given by her to the Lincoln County State Bank.

The appellant claims that the property was community property, and could not therefore be mortgaged by the wife, and that there is no element of estoppel in the case which would preclude appellant from urging the invalidity of the mortgage to the Lincoln County State Bank. The evidence in the case is by no means satisfactory. There is evidence in the record which tends to establish the fact that the property mortgaged was purchased by Mrs. Holmes, individually, in the state of Illinois, and that title passed to her in that state, and that under the laws of that state such property became her separate property. If this be true, and the property became the separate property of Mrs. Holmes in the state of Illinois where purchased, it would still remain her separate property when brought to this state. (*Douglas v. Douglas, ante*, p. 336, 125 Pac. 796.) There is also evidence in the record which tends to show that Mrs. Holmes' husband has at all times disclaimed any interest in this property or the bakery business, and at all times asserted that it was the separate property and business of Mrs. Holmes, and that he gave her all his community interest in the property and her earnings and receipts therefrom. There is nothing in the law which would forbid or prohibit the husband giving to his wife his interest in any community property or in her earnings, so long as it is not done in fraud of creditors. (Schouler on Domestic Relations, secs. 189, 293; Long on Domestic Relations, sec. 78; 14 Am. & Eng. Ency. of Law, 1032, 1033; *Jackson v. Torrence*, 83 Cal. 521, 23 Pac. 695.)

It very satisfactorily appears that the $400 borrowed from the Lincoln County Bank was loaned to Mrs. Holmes individually and upon her individual credit and the security afforded by this mortgage. There is no reason why the money thus borrowed on her individual credit would not become her separate property, and it appears that at least a part of this was used in paying off the notes given as part

of the purchase price for the oven and bakery supplies. Of course, there can be no room for doubt but that under the statute (sec. 2680, Rev. Codes), property such as here in question would primarily be community property. In face of the record as it appears in this case, however, we would not feel justified in holding that there was no substantial evidence to support the finding that this was the wife's separate property at the time she executed the mortgage.

On the question of estoppel, the evidence is even more vague and uncertain. It fairly appears that the appellant had notice at the time it took this second mortgage that the mortgage had previously been given by Mrs. Holmes to the bank. It is testified by both Holmes and wife that the appellant's agent knew of the existence of this first mortgage, and that "he understood at the time" that the mortgage was executed to the Milling & Elevator Co. that it was given and intended as a second mortgage. Of course, if, when the mortgage was given, it was understood between the parties that it was given as a second mortgage and that the previous mortgage, though for some reason invalid, was intended to be recognized by the mortgagor, and the second mortgagee accepted his mortgage with this knowledge and under such a state of facts, he would certainly be estopped and precluded from thereafter asserting the invalidity of the first mortgage and the superiority of his own mortgage. (*Johnson v. Jouchert,* 124 Ind. 105, 24 N. E. 580, 8 L. R. A. 795; *Hardin v. Hyde,* 40 Barb. (N. Y.) 435; *Gale v. Morris,* 30 N. J. Eq. 285; *Wells-Fargo Co. v. Alturas Commercial Co.,* 6 Ida. 506, 56 Pac. 165.) It has been held, however, that a mortgagee might, under such circumstances, abandon his mortgage and attack the previous mortgage on the ground of its invalidity. (*Old Nat. Bank v. Heckman,* 148 Ind. 490, 47 N. E. 953.)

In this case, there are no special equities in favor of the appellant superior to the rights of the bank. Appellant's mortgage was not given as security for a present loan or credit, but, on the contrary, was given to secure a pre-existing debt. The appellant had from time to time furnished supplies to Mrs. Holmes for use in her bakery, and the ac-

count had been running until it had reached the sum secured by this mortgage. On the other hand, the mortgage to the bank was given as security for money loaned at the time.

Under the facts as they appear from the record, we think they are sufficient to support the findings made by the trial court. The judgment is affirmed, with costs in favor of respondent.

Stewart, C. J., and Sullivan, J., concur.